v. United States v. Omotayo. All right, Mr. Kluger, good morning. You've reserved a minute for rebuttal. Yes, Your Honor. So, whenever you're ready, you may proceed. May it please the Court. My name is Matt Kluger. I'm appearing for the appellant, Temetope Omotayo. Good morning, Your Honors. This case involves what has become commonly known as an email compromise scheme. And I think to better understand the law on the subject, it's important to really understand the scheme so that we can understand what really was at the crux of the scheme in this case. In this case, and the evidence at trial showed that there were hackers somewhere in the world, presumably in Nigeria, and they would hack into various business email accounts, and then purporting to be other people, these individuals would send fake emails to actual people at those businesses to try and trick them into wiring funds into fraudulent accounts that were controlled by members of the conspiracy. That was the crux of the scheme in this case. Now, occasionally, although certainly not always, the bank may have some questions about the transactions in question. So, the co-conspirators or the conspirators would create documents, fake documents, to show to the bank if a question arose, which it rarely did, the evidence at trial showed. Usually because that was more of a periphery type support, these documents. Well, it didn't happen that often, but the documents were prepared specifically to assuage the concerns of the bank, right? Correct, Judge. That if the issue came up, that the conspirators would be able to show fraudulent documents to the bank to further support the fraudulent transaction. Right. So- So, having the name of an actual employee on the document would be valuable, right? Not particularly. Why not? The bank could just quickly go online and figure out if that employee worked there. Because these documents, or specifically the document in this case, it had a tremendous amount of pertinent information on the document already. I mean, it had much more pertinent information than just the name of an employee. It had banking information. It had wiring information. It had all sorts of- But that stuff was false, right? I'm sorry. I'm sorry, Judge. Go ahead. I was going to say the banking information and the wire transfer information was incorrect. It was to an account that wasn't connected to the- Well, some of the information was false, but a lot of the information was true. I mean, the name of the corporation was true. The billable hours on it were true. So you're saying that the document could have been used in largely the same way, that the use of Yulia Roitman's name on it, the appearance there, was just an additional fact that tried to give more credibility to this, the document. Is that right? Yes, Justice. Facilitated the fraud as opposed to being at the crux of the fraud? Correct, Judge Carney. It was essentially window dressing. It was to give the invoice, just like an invoice number or anything else, to give it some small amount of additional legitimacy. But it wasn't at the crux of what made the fraud criminal, which is really what we need to look at in this case and what Dubin looks at, which I'll address in a moment. But to be clear, Ms. Roitman herself, this kind of random employee that was on the invoice, Ms. Roitman herself, she was not the intended victim in this case. If its intention was to give the appearance of authenticity to assuage any doubts that might arise in the bank about the genuineness of this thing, then why isn't that at the crux of the illegality? Because the crux of the fraud, I mean, that's what it's all about, is to fool people, the sender of the money and the bank and so forth, to fool them into thinking that it's genuine. Well, it was to fool, the crux of the criminality was to fool someone at the business to wire their money to a bank. If at some point- It's a question of how broadly you're using the word crux. Well, I think it's not just, I mean, I think the Supreme Court of the United States defined crux pretty broadly, more broadly than I think we started to discuss it here already this morning. I mean, before I even get to the Supreme Court, I just want to say parenthetically that our argument, even in the court's pre-Dubin case law, and I'm referring to United States v. Wed, where this court had set a standard of, I guess we call it a further or facilitate standard. That's kind of what we're talking about here. Did it further it somehow? Did it facilitate it somehow? But that's not what the standard is anymore. I mean, I wouldn't say that Yulia Roitman's name on the invoice didn't serve some purpose. I mean, it was everything on the, everything served some purpose. But did it facilitate it to some extent? It's hard to say, maybe some minor extent. Did it further it? I mean, look, when I first wrote the brief, my understanding of Wed is that it required, even Wed required something more. I mean, this is aggravated identity theft. It's a two-year addition. What's your response to the government's position that Yulia Roitman's name was stolen and that that itself is kind of enough to create, turn this into aggravated identity theft as having it used as part of carrying out the conspiratorial scheme? I think that, first of all, it's hard to, let's assume that it was stolen in the sense that someone hacked into someone's e-mail account and took an invoice that already had a name on it. I mean, we don't, I'm not even sure if that even falls under the rubric of actually stealing something. You could probably find it on the website too, right, or on LinkedIn. You could find it anywhere. It's not really stealing it in the sense of me stealing someone's credit card number or stealing someone's identity. I mean, you could find the name Yulia Roitman. You could find my name all over the Internet, unfortunately. I mean, the fact is it's not hard to find someone's name. But the point is it wasn't stolen like the government had said, like a garbage pile where you'd steal someone's information. That's stealing. But the point of the matter is I would still say that in the end, whether you get something legally or whether you steal it, if you use it unlawfully, then you're using it in a way that it shouldn't be used. So I would certainly concede that point. But I don't think there's any distinction, and I don't think Dubin makes any distinction in how the name comes about. I mean, the distinction, Dubin always falls back to the same thing, which is was it at the crux of the criminality. Dubin doesn't say, well, there's a different standard. I only have two minutes left. Well, the point of Dubin is that it had nothing to do with it, right? I mean, there was no—I mean, it was— the fraud in Dubin was a person inflating their own credentials so they could get paid more money, right? Correct, Judge, but the patient's name itself was still used deceptively. Well, but the patient's name—I mean, there was no— No, was billing for—no. The person was—Dubin was billing for services that weren't provided to the patient. They were inflating— Well, they were inflating their own rates, right? Correct. So there was—I mean, so—but even—I mean, the—just jumping back to Dubin itself, when we were talking about—I think that the facts in Dubin are actually more indicative of aggravated identity theft than the facts in this case. The facts in this case was just a name that anyone could get anywhere that really added nothing to the case. In Dubin, the petitioner in Dubin used the petitioner—used the patient's name, the Medicare number, and submitted bills. Without that information, that was essential— essential to achieve the purpose of the scheme in Dubin. Here, you couldn't have—if there's no patient, there's no fraud. So— No, but in Dubin, it was the overstated qualifications of the employee who treated the patient. That was the fraud. Correct, and the fraud— Which got them higher rates of reimbursement. Yeah, but like— The name of the patient was not fraudulently— But I think like we all said before, or like Justice LaValle said— Justice LaValle said before— Judge LaValle. Justice LaValle said— Judge. Judge LaValle said— We're hoping it's coming soon. I say Justice because Judge LaValle said before, you know, these are all related. You can't take one piece of the fraud and—I mean, just like Judge LaValle said, you know, there was email and then there's the banks. I mean, you can't have the fraud in Dubin without the patient. You can't just say the patient had nothing to do with it. That patient was essential in achieving the fraud. And here, the scheme could have been carried out without Julia Rothman's name entirely, right? Not only could it, it was continually carried out with the name. The fraud didn't need the invoice. The invoice was not necessary to achieve the fraud. Well, maybe no—so you're saying anything on the invoice wouldn't have mattered, that the invoice is not part of the crux of this thing. That's your argument. Because I don't—that's not clear to me that that's what is the standard, even after Dubin. It's whether it's used in a fraudulent or a deceptive manner. Judge, in direct answer to your question, I don't think that the invoice was part of the crux of the fraud. I don't think anything on the invoice was. But if we look at the invoice, there was information on the invoice that was much more— that would have been much more important to the bank than the name Julia Rothman. They would have seen corporations' names. They would have seen— Maybe, but if the bank then called the company to say, hey, we have this invoice from Julia Rothman, they would say, yeah, Rothman's with us. That's fine. That's her client. MRK's her client. I actually submit that the complete opposite would have happened. If the bank had ever decided to call Julia Rothman and there was no evidence. They would have called their connection at the company. It probably counts. Right. This is pure speculation, of course, because there was no evidence at trial what the bank would have done. But, you know, this is what the government did at trial. They put this in and then later argued different ways. Like the bank made Google. Like there was no evidence that the bank would ever—we're just speculating about that. And even if they had, the one person that they probably should never have spoken to was Julia Rothman because she would be the only person that would know that it—or one of the only people that would know that the transaction itself was actually fraudulent. So it actually goes against what the co-conspirators— if they had ever even seen the name Julia Rothman on the invoice, which they probably didn't. It was just an invoice that was taken from an email. And I know my time is up, Judge, so I had a few more points, but I'll wait for my one-minute rebuttal, unless the court has any other questions. All right. We'll hear from the government. Ms. Dell. May it please the court. My name is Rebecca Dell. I'm an assistant United States attorney in the Southern District of New York, and I represent the United States in this appeal as I did at trial in the district court. I'd like to pick up on one point that we were talking about earlier with Mr. Kluger, which is what really is the crux of the crime here? Because as Dubin said, the use must be at the crux of what makes the crime criminal. Here, the crime here is a wire fraud conspiracy. It was an agreement among Omotayo and his co-conspirators to obtain money from victims by deceiving them into sending money to bank accounts held by Omotayo's co-conspirators. It was an agreement. And here the invoices- Could I just interrupt for just one second? Julia Roitman was not the victim, right, of that crime? Her company was. She was not the victim. That's correct, but she was the identity theft victim in this case. And the invoices that were created here, which had Julia Roitman's name on it, were one of the tools that the conspiracy used in order to gain access to victims' money. In that way, it was at the crux of the criminality. Why didn't it just facilitate or further the crime rather than being at the crux? I think of identity theft as someone stealing my passport, pretending to be me, incurring debts, and so on. And this is supposed to be aggravated identity theft, so use of a name without lawful authority. But here they could have submitted and used this invoice just as easily with no name to verify. It has a little bit more credibility. But the scheme was going on with or without Julia Roitman's name on the invoice. So what am I missing here? Why is Julia Roitman rightly considered the victim since it was her identity that allegedly was stolen? Julia Roitman here is the victim because the invoices improperly stated that she approved the wire transfer to a shell account opened by one of Omotayo's co-conspirators. But the crime is the wire fraud, right? So it's the company that's paying money to a fake bank account. The crime here is, in fact, a conspiracy. It's an agreement to obtain money from victims by deceiving victims into sending money into shell accounts. So it's not this specific wire transfer. It's an agreement to obtain money. And one of the ways that they sought to obtain money from victims, in fact gain access to that money once it reached a bank account, was to use this invoice so that if a bank questioned the wire, they could give it to the bank and say, this has been approved by a project manager at JSS. But couldn't they have submitted it without anyone's name and said, here's the invoice? They could have. So it made it more credible, marginally more credible, to have the name of an actual person that could have been identified on LinkedIn or on a website. But you say the name was stolen and that she is the victim of aggravated identity theft because her name was used on this. Why isn't it just facilitating and further the basic crime of the wire fraud? I think perhaps it could be helpful to look at Dubin, which asked us to focus on what is being used deceptively. Here, Ms. Reutman's name is what is being used deceptively. The invoice is deceptively stating that she, in fact, approved this fraudulent wire transfer to Omotayo's account. But I'm still having trouble finding that that's at the crux of the crime and the scheme here. Her, it could have been anyone's identity listed there. And they didn't even need it in order to help verify to the bank that there were these companies and this was a legitimate transfer. Well, certainly they could have submitted the invoice without her name. Her name here is essential to the invoice because if the bank were ever to call JSS or do any type of its own research and see, do you, in fact, have an employee named Yulia Reutman? Do you, in fact, have someone named Yulia Reutman in the role of approving wire transfers? Someone would be able to say, yes, she works here. She approves wire transfers. So I agree, it's better. It's a better way to carry out a fraud, but it's not necessary to, it's not at the crux of the heart of the fraud. But Dubin did not, while Dubin said that a but for use of identification would not be enough to be at the crux of the fraud, they certainly didn't say that that was required.  Well, Dubin talks about a situation where a pharmacist takes the name of somebody who's in the pharmacist's files and uses it to open a bank account in a patient's name, not stealing from the patient, but using the name deceptively to engage in bank fraud, where the bank would be the victim, right? Right, yes. And Dubin- To be someone, the crux is they have to get the bank account and use the money. So the name is getting used. That person has been impersonated in a way that is, to me, the essence of the scheme, they couldn't carry it out without that person's name. Whereas here, it seems more ancillary to me. But I've interrupted you enough, please go on. I think pointing to some of the examples in Dubin is also helpful to look at. They focus a little bit on what it means to possess and transfer a means of identification during and in relation to a crime. And they talk about a defendant who rifles through someone's discarded trash and pulls out a bank statement to open up a bank account. And they focus on how that could be possession of a means of identification during and in relation to a crime. That is what Omotayo did here, when he received two fraudulent invoices containing Ms. Reutemann's name, which we believe that the evidence demonstrates was stolen by the same hackers who hacked into the email accounts here. He possessed- I'm sorry, and what does it mean to steal a name? To take it without their knowledge.  And one can do that, I mean, you know people's names. I didn't, I mean, you don't take it away from them. Yes, but you also don't take a credit card recipient's name away from them when you steal their bank number. Here, they used her name. Used the name, I understand. Stole the name, I don't quite get it. Well, the statute doesn't talk about stealing, right? It's just knowingly transfers, possesses, or uses. That's correct. The statute doesn't talk about stealing. Dubin in particular, in its decision, focuses on how stealing is often associated with possession and transfer. And they then talk about how using a means of identification is often focused on a deceptive use. And here, Omotayo did all three when he obtained these fraudulent invoices, possessed them, transferred them over to Edy, his co-conspirator, so that I could be shown to a bank. In that way, he satisfied the statute. And again, I think it's important to focus on what the actual crime is here. Would you be saying that the crime was not committed if it were demonstrated that the name was not stolen, but the name was derived from honestly obtained the name through various means, but in no way stolen? Would that damage your position? No, it is not a requirement that the name be stolen. And in fact, Dubin recognizes, and I think this circuit has recognized, that you can obtain someone's name or means of identification lawfully, but still use it unlawfully. And in this particular case, again, by obtaining these two invoices with her name, which demonstrated that she'd authorized the wire transfer, Omotayo deceptively used Ms. Reutemann's name. I'm just having such difficulty with treating this as aggravated identity theft. I think of identity theft when you look at the main statute, but just identity theft, it's stealing someone's passport and presenting yourself as them as you cross the border or as you do some business transaction or whatever. Here, the use of her name, which is identifiable maybe on the Internet someplace, is related to the company, maybe on LinkedIn, I have difficulty conceiving that as stolen. And it doesn't seem necessary to committing this offense that is charged. It seems very remote from pretending to be someone else and can you give me some comfort that, I mean, this seems so broad and wide reaching that I don't really see an end to it. Whenever any real person's name is used in connection with any kind of fraud. Well, Dubin did, again, Dubin did not require that a name be stolen in order to satisfy the aggravated identity theft statute. In addition, Dubin did not require impersonation of the person in order to satisfy the aggravated identity theft statute. Dubin instead focused on just two of the elements of aggravated identity theft, use and in relation to. And they said when someone deceptively uses a person's means of identification at the crux of the crime, that satisfies the aggravated identity theft statute. So you shouldn't be concerned about these other broad interpretations. This is what Dubin focused on. And here, that's exactly what Omotayo did when he deceptively used two invoices with her name that indicated that she had approved a fraudulent wire transfer. In addition, he also possessed and transferred those same means of identification during and in relation to the wire fraud conspiracy. There are, again, there are several elements to an aggravated identity theft statute. Dubin focused on two, and it gave some, which was use in relation, and it gave some color on what possession and transfer means. He identified her name from a website and just kind of kept it in his mind in case he got a call, but never put it on a document like this. He was stealing it with the idea of potentially using it if he gets a call from the bank. Has he committed aggravated identity theft? Based on your hypothetical, it doesn't appear that he actually used the means of identification on- Well, he stole her name. But it doesn't appear that he did anything with it. In fact, in this particular case, whether or not Julia Roitman's name was stolen, and in fact, we believe that the evidence shows that it was, whether or not it was stolen, let's assume that it wasn't. It was still deceptively used on two fraudulent invoices at the crux of the conspiracy here. And that's all that Dubin requires. It doesn't require stealing. It doesn't require impersonation. And for that reason, we believe that the judgment should be affirmed here. Any other questions? No. All right. Thank you, Ms. Dell. Mr. Kluger, you have a minute for rebuttal. Thank you, Judge. Judge Carney, I think your difficulty and your hesitancy to find that this is at the crux of the scheme here is well placed. And I think we should all have trouble respectfully saying that this was aggravated identity theft. Particularly- But the examples in Dubin, it seems to me, are so different than this. In Dubin, the examples that the court gave was where a lawyer rounds up her hours from 2.9 to 3. And bills her client using the client's name. I mean, that is one where, according to Dubin, that's not within the crux of the fraud. The client's name is not being misused in the sense that the statute contemplates. But this is not that. I mean, and Dubin was the same. Dubin was a situation where the patient wasn't billed, the bill was made for services provided to the patient. What was false was the qualifications of the employee who provided services to the patient, which then bumped up the rates, at least that's my understanding of it. So again, in both the example, Dubin itself and the example provided by the Dubin court, the use of the name is truly peripheral and not used deceptively. That seems to be the difference. Respectfully, Judge, I don't know how the name in Dubin could be said to not have been used deceptively. There could have not been a fraud without the patient's name and Medicaid number. There was no way to submit the invoice unless you misused, deceptively used the patient's name. It was an inflated invoice, right? That was the fraud. I think that one of the issues that Your Honor may be grappling with is the same issue that Justice Gorsuch was grappling with, which is that, and I think that the answer to the court's question is that, and what Dubin really stands for, and what I think we, I think this may be one of the first courts to interpret Dubin, is there are different ways to look at different ways to use things deceptively, but we have to look at whether the deceptive use or the, was at the crux of what made the, I think Dubin gives guidance that it has to be at the crux of what made the fraud criminal, and that answers Your Honor's question. Because none of these things, whether it's in Dubin, whether it's in Omatayo, even though it may not be the exact same factual scenario, was at the crux of the scheme. The use of, now, just quickly, Judge, because I didn't get to, Ms. Dell has said three times already, or four times during her argument, that Julia Roitman on the invoice approved the payment. But the invoice is in the supplemental appendix at 35. All it has is Ms. Roitman's name amongst, there's nothing in here that says Julia Roitman approved this transaction or said this transaction was okay. It's just a name. It's just simply a name on an invoice. It does not further the scheme at all, and it's certainly not at the crux of what made this email compromise scheme criminal. And I would ask the court that my rule or the Rule 29 motion should have been granted, and I would respectfully ask the court to reverse Mr. Omatayo's conviction on the aggravated identity theft. Thank you. Thank you, Mr. Cleaver and Ms. Dell. We will reserve decision.